J-S18024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE MATTHEW GAYDOS | : | |
| | : | |
| Appellant | : | No. 1646 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 12, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003068-2019

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: SEPTEMBER 12, 2022**

Kyle Gaydos appeals from his judgment of sentence. He argues the court erred in designating him a Sexually Violent Predator ("SVP")[1] because the Commonwealth's expert did not testify that he was likely to reoffend. We affirm.

Gaydos pleaded guilty to Corruption of Minors, Criminal Use of a Communication Facility, and Sexual Abuse of Children (Child Pornography).[2] The trial court described the underlying facts as follows.

> [Gaydos] admitted that between July 18, 2018 and August 6, 2018, while [he] was present in Center Township, Berks County, Pennsylvania, he did use various electronic devices, specifically three Apple iPhones and an Apple iPad, to engage in conversations with males under the age of eighteen (18). He admitted that he did engage them in sexual conversations and did ask for those

---

[1] *See* 42 Pa.C.S.A. § 9799.24.

[2] 18 Pa.C.S.A. §§ 6301(a)(1)(i), 7512(a), and 6312(d), respectively.

minors to send him unclothed pictures of themselves and that he requested those photos for his sexual gratification. The state police downloaded and performed a forensic evaluation of the three devices and approximately 280 images were found. Sixteen (16) of those images were compared to the National Center for Missing and Exploited Children, for child identification, and did come back as child victims that have been identified by law enforcement as children under the age of eighteen (18). [Gaydos] elicited photographs for children as young as twelve (12) years old. The investigation [of Gaydos] was prompted when [Gaydos] solicited an out-of-state minor who was twelve years old. [Gaydos] did have a photograph of that child on his devices.

Trial Court Opinion, filed 2/3/22, at 3.

The court sentenced Gaydos in September 2020 to an aggregate sentence of one to two days of imprisonment followed by 18½ years of probation. The court ordered an evaluation by the Sexual Offender Assessment Board ("SOAB"), which recommended that the court classify Gaydos as an SVP.

Before the court was able to hold an SVP hearing, in March 2021, the Adult Probation Office alleged Gaydos violated his probation ("VOP"). At the VOP hearing, Gaydos admitted to having violated his probation and the court sentenced him to restart the previously imposed term of probation.

The court held the SVP hearing in October 2021. The Commonwealth presented the expert testimony of Dr. Veronique Valliere. The trial court recounted her testimony as follows.

[Dr. Valliere] opined that [Gaydos] meets the criteria for Other Specified Paraphilic Disorder (paraphilic sexual interest in children and adolescent males) that served as the impetus to his offending and that he engaged in predatory behavior as delineated in her report.[8]

- 2 -

⁸ Dr. Valliere's report was admitted as Commonwealth Exhibit 1.

In Dr. Valliere's professional opinion, [Gaydos] targeted prepubescent and postpubescent boys to sexually engage with and form a relationship for sexual exploitation. [Gaydos] self-admitted (to the state police) his arousal to children between the ages of ten (10) to sixteen (16) years old. He masturbated to the illegal images of child sexual abuse he collected. She described this behavior as an entrenched deviate sexual arousal pattern because it lasted over 6 months, thereby qualifying him for the diagnosis rendered. She noted that he specifically enticed and lured children online to engage with him in a sexual manner. She found [Gaydos] to have several significant risk factors, specifically that his intended victims are male and were strangers, that this was not his first non-contact sex offense,⁹ his age,¹⁰ the lack of 'protective' seeking experience (being that he has never been married or in an intimate relationship) and that he continued to engage in sex offending behavior after police contact. [Gaydos] was diagnosed with Autism Spectrum Disorder when he was in second grade. Dr. Valliere acknowledged that his autism is a complicating factor because it can be related to preoccupation and obsessive behavior and potential failure to appreciate the impact of his behavior on others and/or how it harms children even though there was no direct contact. Dr. Valliere considered the positive factors for [Gaydos]. She noted that [Gaydos] self-identifies that what he was doing and struggling with is a problem and that this understanding makes him a good candidate to be motivated to manage and participate in treatment. However, she pointed out that this is a double-edged sword as it also shows he was unable to manage himself which demonstrates the strength of his sexual interest.

⁹ [Gaydos]'s prior record was for criminal trespass where [Gaydos] took a (neighbor) child's underwear from his home. The factual assertions surround[ing] this incident were not contested and are described in Dr. Valliere's report beginning at the second to last paragraph on page two (2) and continuing onto page three (3).

¹⁰ [Gaydos's] age was 24 at the age of his offense and age 27 at the time of the evaluation.

Dr. Valliere found that [Gaydos]'s behavior met the definition of predatory behavior. After vigorous cross examination, Dr. Valliere

stood firm with her opinion that based on the statutory definition, [Gaydos] met the qualifications to be a designated a[n SVP].

Trial Ct. Op. at 5-6 (one footnote omitted).

The court found the Commonwealth had presented clear and convincing evidence to support the SVP designation and issued an order designating Gaydos an SVP. Gaydos appealed,[3] and raises the following:

Did the lower court err in determining [Gaydos] to be a Sexually Violent Predator where the Commonwealth failed to prove by clear and convincing evidence that he has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses, as their expert never said that there is a high likelihood of sexual recidivism, only said that his paraphilic disorder is "related to a risk of reoffense"?

Gaydos's Br. at 4

Gaydos argues that "the statute requires clear and convincing evidence that, owing to their mental abnormality, offenders will be *likely to reoffend*: but no testimony was offered to support such a conclusion about [Gaydos]; Doctor Valliere simply never said that he would be likely to reoffend." **Id.** at 11 (emphasis in original). According to Gaydos, Dr. Valliere testified that she "can't predict [Gaydos's] likelihood to reoffend." **Id.** (quoting N.T., SVP Hearing, at 9). And, while Dr. Valliere testified Gaydos's paraphilic disorder is "related to reoffense," Gaydos argues that she did not specify how highly the

---

[3] Although Gaydos's notice of appeal states that he appeals from the order designating him as a Sexually Violent Predator, which the court issued after Gaydos's sentencing, the judgment of sentence was not final until the SVP determination was rendered. **See Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa.Super. 2016). Thus, we have amended the caption to reflect that Gaydos's appeals lies from his judgment of sentence.

two are related. *Id.* (quoting N.T. at 9). Gaydos posits that the lack of testimony predicting his likelihood of reoffending is fatal to the SVP designation.

Gaydos also argues that some of Dr. Valliere's testimony indicated Gaydos would be amenable to treatment and not likely to reoffend. He points out that she stated, "[H]is own self-identification that what he was doing and what he was struggling with was a problem," which "can be very positive in terms of motivation to be managed and participate in treatment." *Id.* at 12 (quoting N.T. at 10, 12). Gaydos further emphasizes that his offenses were "no-contact," he does not have an antisocial personality disorder, and he has never had the opportunity to participate in sex-offender treatment.

A potential stumbling block to our consideration of Gaydos's issue is the fact that the transcript of the SVP hearing is not in the certified record. It is the appellant's burden to ensure the certified record is complete, and any claims that we are unable to review due to the absence of materials from the certified record may be deemed waived. *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*).

The certified record shows that Gaydos filed a request for the transcript of the SVP hearing on October 27, 2021, and the court ordered the reporter to transcribe the hearing. The original request and order are in the record, and a corresponding entry is listed on the docket. However, the transcript is not in the certified record, and the docket does not reflect that a copy of the transcript was ever filed. Moreover, the docket reflects that a copy of the

docket entries—showing the transcript was never filed—was sent to defense counsel on February 10, 2022.

Nevertheless, we will not find waiver, as the absence of the transcript does not hinder our review, for several reasons. First, the trial court provided a thorough and detailed description of the testimony presented by the Commonwealth's expert, Dr. Valliere, and Gaydos does not disagree with the trial court's summary. Second, a copy of Dr. Valliere's report, from which she testified, and which was admitted as evidence at the SVP hearing, was filed on the docket and is included in the certified record and corroborates the court's description of the testimony. Third, and perhaps most importantly, Gaydos's argument misconstrues the law.

We review an SVP designation to determine whether the Commonwealth presented clear and convincing evidence that the defendant meets the statutory definition of an SVP. *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa.Super. 2015). "As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth." *Id.* (quoting *Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa.Super. 2011)).

To be classified as an SVP, the defendant must have "a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. The statute defines "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a

manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." ***Id.*** The defendant's conduct must also have been "predatory," which the statute defines as "[a]n act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization." ***Id.***; ***Commonwealth v. Stephens***, 74 A.3d 1034, 1038 (Pa.Super. 2013).

To determine whether the defendant meets the above definition, the SOAB evaluates the following factors, "which are mandatory and are designed as criteria by which the likelihood of reoffense may be gauged":

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b); *Commonwealth v. Morgan*, 16 A.3d 1165, 1168 (Pa.Super. 2011) (quoting *Commonwealth v. Fuentes*, 991 A.2d 935, 941-42 (Pa.Super.2010) (*en banc* )).

However, although the statute requires "an inquiry into the likelihood of reoffense," it does not require an "assessment of the likelihood of reoffense," or "personal risk assessment." *Morgan*, 16 A.3d at 1170, 1173 (quoting *Commonwealth v. Dixon*, 907 A.2d 533, 539 (Pa.Super. 2006) and *Commonwealth v. Geiter*, 929 A.2d 648, 651 (Pa.Super. 2007)). The likelihood of reoffense is one factor to be considered, not an independent element required for an SVP designation. *Id.* at 1173.

Gaydos does not contest that Dr. Valliere diagnosed him with paraphilic disorder and testified that this served as the impetus to his having engaged in predatory behavior. Dr. Valliere moreover testified that Gaydos's behavior in the instant case lasted over 6 months, that it was not his first sex offense, and that he continued his behavior even after involvement with the police. Dr. Valliere testified as to other factors creating a risk of reoffense, such as Gaydos's diagnosis of autism spectrum disorder, his age, his never having had

- 8 -

an intimate relationship, and the fact that his victims had been minors who were strangers to him. This was clear and convincing evidence that Gaydos meets the statutory definition of an SVP. ***See Stephens***, 74 A.3d at 1042 (holding evidence of SVP sufficient when considering the facts of defendant's crimes in combination with a diagnosis of pedophilia).

Gaydos argues the evidence was insufficient because Dr. Valliere testified she could not predict with certainty how likely it is that he will reoffend and did not testify there is a "high likelihood" Gaydos will reoffend. However, such an assessment is not required for an SVP designation. ***Morgan***, 16 A.3d at 1170. Rather, Dr. Valliere's testimony that Gaydos's paraphilic disorder is "related to reoffense," taken in context, is sufficient to satisfy the inquiry required by the statute. And, while Dr. Valliere testified that Gaydos's awareness of his issues might indicate he may benefit from treatment, she also testified that it might not, as Gaydos was unable to control his behavior despite his awareness. Thus, Gaydos's arguments that the court erred in designating him as an SVP are without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/12/2022</u>